UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

GILLMAN, BRUTON & CAPONE, LLC
60 Highway 71, Unit 2
Spring Lake Heights, NJ 07762
(732) 528-1166
Attorney for Debtor- In-Possession
MARC C. CAPONE MC4795

| | |
|---|---|
| In Re:<br><br>**Spectacular Solar, Corporation** | Case No.:  **22-15822**<br><br>Judge:  Christine M. Gravelle<br><br>Chapter:  **11** |

**MODIFIED SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION**

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of Spectacular Solar Corp., and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**
**Gillman, Bruton & Capone, LLC  60 Highway 71, Spring Lake Heights, NJ 07762**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR_____  IN  COURTROOM  No.____ at 402 East State Street, Trenton, New Jersey 08608.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

January 20, 2023

Marc C. Capone, Esq
Gillman, Bruton & Capone, LLC
60 Highway 71
Spring Lake Heights, NJ 07762
(732) 528-1166
Fax (732)528-4458
mcapone@gbclawgroup.com

**TABLE OF CONTENTS**

                                                                                                  **Page**

**SUMMARY OF PLAN**................................……………………....…..….. 6


**I. HISTORY OF BUSINESS OPERATIONS OF THE DEBTOR**   ……………....… 8
    1.1 Nature of Debtor's Business   ……………………………………… 8
    1.2 Description and History of the Debtor' Business   …………………....... 8
    1.3 Filing of Debtor's Chapter 11 Case ...............…………………………  9
    1.4 Legal Structure and Ownership………………………..... …….............9
    1.5 Debtor's Assets…………………….............…….................... 9
    1.6 Debtor's Liabilities…………………………………….....……………. .10
    1.7 Current and Historical Financial Condition…………………………  10
    1.8 Events Leading to the Filing of Bankruptcy Case………………....… 11
    1.9 Significant Events During the Bankruptcy Case…………………        11
    1.10   Projected Recovery of Avoidable Transfers…………….........…… . 11


**II.  THE CHAPTER 11 PLAN OF REORGANIZATION**…………………….…….12
    2.1 Unclassified Claims ...................…..  ……………………………….12
        A. Administrative Expenses and Fees ……………….....................…..12
        B. Priority Tax Claims.........…………………………….............. ... 14
    2.2 Classes of Claims and Equity Interests… ……………….................... .15
        A. Classes of Secured Claims...…………………………………........15
        B. Classes of Priority Unsecured Claims…..………………………......17
        C. Class of General Unsecured Claims……………………..………......18
        D. Class of Interest Holders..........................…………………...........18
    2.3 Estimated Number and Amount of Claims Objections   …………..…  19
    2.4 Treatment of Executory Contracts and Unexpired Leases……………..19
    2.5 Means of Effectuating the Plan  ……..…………………………........21
    2.6 Payments………………………………………………………………22
    2.7 Post Confirmation Management…………………………………….22
    2.8 Tax Consequences of Plan……………………………………….…..22
    2.9 Projections in Support of Debtor's Ability to Make Payments
        Under the Proposed Plan……………………………………………22


**III.  FEASIBILITY OF PLAN**………..................…………………………… ....23
    3.1 Ability to Fund Plan   .......……………………………….................23
    3.2 Ability to Make Future Plan Payments and Operate without Further
        Reorganization………………………………….…….......…………………23


**IV.  LIQUIDATION ANALYSIS**………………………………….......……….…....24


**V. DISCHARGE**………………………………...………………………...........24

**VI.    GENERAL PROVISIONS**……………….........………………….….24

　　6.1  Title to Assets………………………………………………………24

　　6.2  Binding Effect……………………………………………………….25

　　6.3  Severability……………………………………………………...…25

　　6.4  Retention of Jurisdiction by Bankruptcy Court……………………..25

　　6.5  Captions………………………………………………………….…25

　　6.6  Modifications of Plan………………………………………………..25

　　6.7  Final Decree…………………………………………………………26

**VII.    ATTACHMENTS**……………………………………………………  26

**VIII.  FREQUENTLY ASKED QUESTIONS**……………………………… 28

**IX.    DEFINITIIONS** ……………………………………………….. 30

## <u>SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS</u>

The Debtors proposed Plan of Reorganization is as follows:

<u>Funding of Plan</u>:  Debtor will fund his Plan as follows:

1)  Estimated Funds on hand upon Effective date of the Plan:  $27,000.00

2)  Quarterly Payments over 60 months based on the Cash Flow Projection as follows:
   - $151,288.00 over the first 12 months;
   - $215,095.00 over months 13 thru 24;
   - $164,000.00 over months 25 thru 36;
   - $189,500.00 over months 37 thru 48;
   - $165,000.00 over months 49 thru 60.

## <u>Treatment of Classes of Creditors</u>:

**Administrative Claims**:
1)  <u>Subchapter V Trustee</u> Fees and Expenses:  estimated at **$6,000.00** to be paid from funds on hand upon the first quarterly disbursement under the Plan and any balance over the initial 2 quarters of Plan disbursements.

2)  Counsel Fees and Costs to <u>Gillman, Bruton & Capone, LLC</u> estimated to be **$45,000.00**, net of retainer paid prior to filing of **$25,000.00** leaving a balance **$20,000.00** to be paid upon the first quarterly disbursement under the Plan and any balance over the initial 2 quarters of Plan disbursements.

**Secured Claim**s:

1)  <u>US Small Business Administration ("SBA")</u> (lienholder)- the SBA shall be paid its allowed claim of $546,900.68 pursuant to the terms of the Note as follows:

   -$546,900.68 over 30 years at 3.75% interest.  Monthly payments of $2,437.00 Paid directly by the Debtor to the SBA.

2)  <u>Kapitus Servicing, Inc. -</u> ("Kapitus") (lienholder)- Pursuit/NYBDC secured claim shall be crammed down to $223,000.00 to be paid through the modification of the

Note as follows: a $25,000.00 lump sum payment in May of 2023 and then monthly payments of $4,500.00 for a period of 44 months directly to Kapitus, and the balance of its claim in the amount of $90,639.06 shall be reclassified and  treated under Class 4 as a general unsecured claim.

3) <u>Ford Credit</u>, lienholder on the '18 Ford Focus; <u>Ford Credit</u>, lienholder on the '16 Ford Transit, and <u>Nissan Motor Acceptance Corp</u>., lienholder on the '19 Nissan NV, shall all continue to receive regular monthly payments pursuant to the respective Notes directly from the Debtor.

**Executory Contracts:**

The Debtor shall assume the Contracts and Leases specified on **Exhibit E** annexed hereto, and will reject the Contracts and Leases specified on **Exhibit F** annexed hereto.

**Priority Creditors**

**1)** Internal Revenue Service- to be paid its priority claim of $62,008.41 with allowed interest of 7% shall be paid over the initial 5 quarters of the distributions, with final payment to the IRS being in February 2024.  Total payout to the IRS inclusive of interest would be $64,384.63.

**General Unsecured Creditors:**

The General Unsecured Claims total **$ 4,444,515.71**
Less PPP loans to be forgiven ($630,000.00) = $3,814,515.71.
The Debtor anticipates this amount will be further reduced once its claims motion is filed and addressed by the Court.

General unsecured creditors shall be paid a total base dividend of all net revenue, after payment of administrative and priority debts, of approximately **$ 590,000.00** on a pro-rata basis over the life of the Debtor's **60**-month plan.   Disbursements shall be made to this class of creditor on a quarterly basis beginning in approximately the **5<u>th</u> Quarter** after the Effective Date of the debtor's Plan.  The final payment shall be made in **February 2028**.

# ARTICLE 1

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1.    Nature of the Debtor's Business.

The Debtor, Spectacular Solar Corp. ("Spectacular") is a small business that operates solar installation business in New Jersey.  Commercial installations account for at least 90% to 95% of its revenue with residential installations accounting for less than 10% of its revenue. .

The Debtor maintains its principal place of business at 50 Cragwood Road, Suite 101, South Plainfield, New Jersey.

### 1.2.    History of Business Operations of the Debtor

The Debtor was originally incorporated in April 2004.  The Debtor was incorporated in the State of Nevada and was originally known as AVL Global, Inc.  The Debtor started operations in 2014 installing commercial solar as DC Solar Integrators, LLC.

The current iteration of the Debtor was formed in 2018 when an amendment to the Articles of Incorporation was filed with the Secretary of State of Nevada changing the corporate name to Spectacular Solar, Inc. Effectively, Spectacular Solar, Inc. merged into Seeker Tec International, Inc. ("Seeker Tec") In 2018, DC Integrators, LLC merged into Seeker Tec and simultaneously changed its name to Spectacular Solar, Inc.  Spectacular filed the necessary certificates to operate in New Jersey in 2019.

The Debtor was registered as a public company in 2019 and began trading shares on the OTC Bulletin Board.  Four hundred and twenty for million shares were issued and approximately thirty-one million shares are currently traded at about $0.01 per share.

Spectacular Solar Corp.  provides solar installation for commercial and residential properties, with more than 90% being commercials installation.

The Debtor expects profitability to continue its upward trajectory in 2022 and beyond, although it does not expect a return to the levels of profit of 2019 and prior in the short term.  However, it will be a viable, profitable business capable of paying its employees and owners at market levels of compensation, while also retaining the ability to repay creditors in accordance with the plan we are proposing.

### 1.3    Filing of the Debtor's Chapter 11 Case.

On October 27, 2022, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Trenton, New Jersey.

### 1.4.    <u>Legal Structure and Ownership.</u>

The Debtor is a Nevada Corporation, having duly incorporated AVL Global, Inc. in April 2004.  On January 18, 2006, a Certificate of Amendment was filed changing the corporate name to China Northwest Biotech, Corp. On June 8, 2007, a Certificate of Amendment was filed with the Secretary of State of Nevada, which changed the corporate name to LGM Biopharma, Inc.

Subsequently, on November 19, 2007 a Certificate of Amendment was filed with the Secretary of State of Nevada, which changed the corporate name to Syncronys International, Inc. On March 25, 2013, a Certificate of Amendment was filed with the Secretary of State of Nevada, which changed the corporate name to Seeker Tec International, Inc. Finally, on October 24, 2018, a Certificate of Amendment was filed with the Secretary of State of Nevada, which changed the corporate name to Spectacular Solar, Inc.

The Debtor was registered as a public company in 2004 and began trading shares on the NASDAQ OTC Bulletin Board. Spectacular Solar Inc. merged into the publicly traded company in 2018. Four hundred and twenty-four million shares have been issued and approximately thirty-one million shares are currently traded at about $0.01 per share.   There are approximately 300 shareholders of common stock.

Douglas Heck is the CEO and only preferred stockholder of the Debtor, holding over 300,000 shares of preferred stock.  Mr. Heck is in the process of relinquishing those shares to the Company. Mr. Heck is also the sole owner and shareholder of DC Solar Integrators Limited Liability Company("DC Solar"), which he merged into the Debtor on June 14, 2019 by the filing of a Certificate of Alternate Name with the New Jersey Department of Treasury-Division of Revenue and Enterprises Services, indicating that the alternate name of DC Solar was Spectacular Solar.  Upon emergence from Chapter 11, the Debtor will have a new CEO, as Albert Francesco is set to take over from Mr. Heck.

### 1.5.    <u>Debtor's Assets.</u>

| Asset | Value | Source of Value |
|---|---|---|
| First Trust Bank-Business Account #6168 | $39,291.00 | Bank balance at time of filing petition. |
| Wells Fargo-Business Account #4721 | $1.00 | Bank balance at time of filing petition. |
| Wells Fargo Business Account #9252 | $26,017.00 | Bank balance at time of filing petition. |
| Wells Fargo Business Account #6993 | $25.00 | Bank balance at time of filing petition. |
| TD Bank-Business Account #7750 | $6.00 | Bank balance at time of filing petition. |
| The Bank of Princeton-Business Account #1114 | $2,851.00 | Bank balance at time of filing petition. |
| Security Deposit-Commercial Office Space | $6,951.50 | Deposit held by Landlord-Craigwood Investments LLC |

|  |  | at time of filing |
| Accounts Receivable-less than 90 days | $269,000.00 | Receivables on Debtors books at time of filing |
| Accounts Receivable-over 90 days | $1,912,068.00 | Receivables on Debtors books at time of filing |
| Miscellaneous furniture | $2,000.00 | Debtor's estimate of market value of furniture at time of filing |
| Miscellaneous Office Equipment | $3,250.00 | Debtor's estimate of market value of equipment at time of filing |
| Miscellaneous Vehicles | $90,736.00 | NADA Replacement Value |
| Miscellaneous Safety equipment | $1,000.00 | Debtor's estimate of market value of furniture at time of filing |
| 2 Car mate Cargo Trailers | $11,000.00 | Replacement Value |
| Customer Lists | $1,000.00 | Purchase price |

### 1.6.    Debtor's Liabilities.

| Creditor | Classification | Collateral | Claim Amount |
| --- | --- | --- | --- |
| Ford Credit | Secured- Lien on title to 2018 Ford Focus | 2018 Ford Focus | $11,373.07 |
| Ford Credit | Secured- Lien on title 2016 Ford Transit Van | 2016 Ford Transit Van | $16,234.00 |
| Nissan Motor Acceptance Corp. | Secured Lien on 2019 Nissan NV | 2019 Nissan NV | $12,092.25 |
| U.S. Small Business Administration | Secured-UCC Financing Statements | All assets of Debtor | $546,900.68 (Claim No. 14) |
| Kapitus Servicing, Inc. | Secured-UCC Financing Statements | All assets of Debtor | $313,639.06 (Claim No. 11) |
|  |  |  |  |
| Internal Revenue Service | Priority | N/A | $1,900.00 (Claim No. 3) |
|  |  |  |  |
| Euler Hermes North America Insurance Company | General Unsecured | N/A | $183,180.82 (Claim no. 1) |
| Avon Foods, Inc. | General Unsecured | N/A | $89,288.00 (Claim no. 2) |
| Exadaktilos Family, lLC | General Unsecured | N/A | $190,634.36 (Claim no. 4) |
| Euler Hermes N.A. Insurance Co. Agent of Soligent Distribution | General Unsecured | N/A | $51,902.51 (Claim No. 5) |
| Jobar Realty Co., Inc. | General Unsecured | N/A | $394,140.15 (Claim No. 6) |
| Farmplast, LLC | General Unsecured | N/A | $1,743,624.29 |

| | | | (Claim No. 7) |
|---|---|---|---|
| First Friends, Inc. | General Unsecured | N/A | $331,078.68 (Claim No. 8) |
| Ascentium Capital LLC | General Unsecured | N/A | Unknown (Claim no. 12) |
| Eugene Bornman | General Unsecured | N/A | $100,312.00 (Claim No. 9) |
| Ohmshiavini Mgmt LLC | General Unsecured | N/A | $452,522.84 (Claim No. 10) |
| Elevated Remodeling LLC | General Unsecured | N/A | $95,335.00 (Claim No. 13) |
| Yassi Law PC | General unsecured | N/A | $10,340.00 (Claim No. 15) |
| Antranig Aslanian, Jr. PC | General Unsecured | N/A | $7,500.00 |
| CBM Services, LLC | General Unsecured | N/A | $47,940.00 |
| CFSB (PPP Loan) | General Unsecured | N/A | $280,000.00 |
| Grant Supplies | General Unsecured | N/A | $6,832.00 |
| Midtown Credit | General Unsecured | N/A | $2,900.00 |
| TD Bank (PPP Loan) | General Unsecured | N/A | $350,000.00 |

### 1.7.    <u>Current and Historical Financial Conditions.</u>

The Debtor has been running a profitable solar installation company for close to two decades.  Unfortunately, COVID had a negative impact on the industry as a whole and the Debtor's business, in particular.   The Debtor was not considered an essential business, thus could not work on their sites.  Business dwindled to practically nothing during the second and third quarters of 2020. The delays on the Debtor's jobs, mandated by the COVID lockdowns, caused cash flow issues and mounting debt.

As illustrated by the chart below, the Debtor's revenue declined precipitously after COVID.  The Debtor has brought in new management and stabilized operations post-COVID . The fixes have included properly timing out payments on contracts, re-staffing the company and the Debtor now only works within the specifics of its contracts and does not add on any extras.

### <u>Debtor's Historical Revenue, Expense & Profitability</u>

| | 2019 | 2020 | 2021 |
|---|---|---|---|
| **Gross Revenue** | $4,614,811.00 | $3,531,337.00 | $5,119,596.00 |
| **Cost of Goods Sold** | ($3,792,163.00) | ($2,778,043.00) | ($2,051,958.00) |
| **Other Income** | $0.00 | $0.00 | $ 697,908.00 |
| **Total Income** | $822,648.00 | $753,294.00 | $3,765,546.00 |
| **Business Expenses** | $778,872.00) | ($2,167,488.00) | ($3,480,675.00) |
| **Net Revenue** | $43,776.00 | ($1,414,194.00) | $284,871.00 |
| **Taxes owed** | ($9,193.00) | $0.00 | ($59,823.00) |
| **Net Profit** | $34,583.00 | $0.00 | $225,048.00 |

**1.8.**    <u>**Events Leading to the Filing of the Bankruptcy Case.**</u>

The Debtor's financial difficulties date back to April 2020 when the government mandated COVID lockdowns shut down the Debtor's entire industry.  As the mandates were slowly rolled back over the period of the next nine months the Debtor was able to resume operations.  Ultimately, the lockdowns caused cash flow issues for the Debtor.  This was compounded by the supply chain interruptions that plagued many industries from the beginning of 2021 and continued at varying levels to the current day.

Since that time, the Debtor has reduced his staff from 20 employees prior to the lockdowns to 17 employees now. The CEO of the Debtor, Douglas Heck, is going to be replaced by current CFO, Al Francesco.  Mr. Heck will become VP of Sales and his compensation will be changed from a salary of $130,000 per year to a salary of $58,000 plus commissions on sales.

Unfortunately, the cash flow problems caused the Debtor to fall behind on certain projects and despite trying to resolve many of these situations, the Debtor was met with multiple lawsuits. The cost of defending these lawsuits as the Debtor was attempting to get back to normal cash flow levels was too difficult for the Debtor to overcome, thus the Debtor needed to seek protection under Chapter 11 of the United States Bankruptcy Code.

**1.9.**    <u>**Significant Events During the Bankruptcy Case.**</u>

- An Application to appoint Gillman, Bruton & Capone, LLC as counsel for the Debtor was filed and has been approved by the Bankruptcy Court.
- An Initial Debtor Interview was conducted on November 18, 2022.
- The 341a Meeting of Creditors was held on November 29, 2022.
- Status Conference was held on December 20, 2022.
- The First Monthly Operating Report was filed on December 27, 2020

**1.10.**    <u>**Projected Recovery of Avoidable Transfers**</u>

The Debtor has reviewed pre-petition transactions and does not anticipate filing any avoidance actions.

**ARTICLE 2**

<u>**THE PLAN**</u>

The Debtor's Plan must describe how its Creditors will be paid.  Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.  For example, Administrative Expenses and Priority Tax Claims are not

4886-8120-2508, v. 1

classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

**2.1.**    **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | **$0.00** | **N/A** |
| Administrative Tax Claim | **$0.00** | **N/A** |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | **$0.00** | **N/A** |
| Professional fees, as approved by the Bankruptcy Court<br><br>**Gillman, Bruton & Capone, LLC** | Total estimated fees/costs of: $45,000.00. Retainer of $25,000.00 received pre-petition.<br><br>**$20,000.00**-balance to be paid through the plan | After Bankruptcy Court approval, Payment through the Plan as follows:<br>**$20,000.00** to be paid from funds on hand upon Effective Date of Plan.. |
| Clerk's Office fees | **$0.00** | Paid in full at time of filing of petition. |

| Trustee<br><br>**Holly Miller, Esq**. | **$ 7,000.00** | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows:<br>The amount of **$7,000.00** to be paid upon the Effective Date of the Plan. |
| --- | --- | --- |
| TOTAL | **$27,000.00** | |

B.      Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
| --- | --- | --- | --- |
| **Internal Revenue Service** | **$1,900.00/$62,008.41- corporate tax for 2021** | Estimated Payroll taxes 2021 corporate taxes assessed in 2022 | The IRS shall not be paid through the Plan for the estimated claim filed by the IRS for payroll taxes- as the Debtor has previously filed these returns and paid this amount directly to the IRS in the normal course of business.  Debtor shall submit proofs to the IRS and obtain an estimated claim that indicates $0.00 balance.<br>IRS shall be paid the $62,008.41 plus allowed interest of 7% within the first year of Debtor's Plan for a total payout to the IRS of $64,384.63. Last payment should be in February 2024. |

## 2.2    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured pre-petition Claims and their proposed treatment under the Plan:

| Class | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | *Secured claim of*: **US Small Business Administration ("SBA")** Collateral description = **UCC Lien on all equipment, accounts and property of Debtor** Allowed Secured Amount = **$ 546,900.68** Priority of lien = **1st** **Lienholder** Principal owed = **$ 546,900.68** Pre-pet. arrearage = **$ 0.00** Total claim = **$ 546,900.68** | NO | NOT IMPAIRED | SBA shall be paid its allowed secured claim outside the Debtor's Plan. Current Balance: The Parties hereto agree that the total outstanding balance of the Loan, inclusive of late charges, costs and fees, is approximately $546,900.68 including principal of $500,000.00 interest of $46,900.68. Repayment: The secured claim shall be paid as follows: (a) $546,900.68 shall be repaid over a 30 year period at 3.75% interest. (b) Monthly payments of $2,437.00 shall be made directly by the Debtor to SBA . |

| 2 | *Secured claim of*: **Kapitus Servicing, Inc.**<br><br>Collateral description =<br><br>**UCC Lien on all equipment, accounts and property of Debtor**<br><br>Allowed Secured Amount = **$ 200,000.00**<br><br>Priority of lien = **2nd**<br><br>**Lienholder**<br><br>Principal owed = **$ 313,639.06**<br><br>Pre-pet. arrearage = $ **0.00**        Total claim = **$313,639.06** | **NO** | **IMPAIRED** | The Plan hereby incorporates the Stipulation of Settlement between the Debtor and Kapitus, attached hereto as **Exhibit G**, which shall be deemed approved by the Bankruptcy Court upon entry of an Order confirming the Plan ("Kapitus Stipulation").  The Kapitus Stipulation provides for allowance of Kapitus' secured claim of $223,000.00 to be paid through an initial lump sum of $25,000.00 in May 2023 and then monthly payments of $4,500.00 per month for a period of 44 months, beginning in June 2023; and b) an general unsecured claim in the amount of $90,639.06 and treated and paid under Class 4 of the Plan.<br><br>Nothing in the Kapitus Stipulation or the Plan or any confirmation order shall be deemed to operate as a release or modification of any of the claims of Kapitus against Douglas Heck or any non-Debtor, none of which shall be affected by the Kapitus Stipulation. |

| | | | | |
|---|---|---|---|---|
| **3** | *Secured claim of*: **Ford Credit**<br><br>Collateral description = **Certificate of Title Lien Notice on '18 Ford Focus**<br><br>Allowed Secured<br><br>Amount = **$ 11,373.07**<br><br>Priority of lien<br><br>= **1st**<br><br>**Lienholder**<br><br>Principal<br><br>owed = **$ 11,373.07** | **NO** | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$11,373.07** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit. |
| **3** | *Secured claim of*: **Ford Credit**<br><br>Collateral description = **Certificate of Title Lien Notice on '16 Ford Transit Van**<br><br>Allowed Secured<br><br>Amount = **$ 16,234.00**<br><br>Priority of lien<br><br>= **1st**<br><br>**Lienholder**<br><br>Principal<br><br>owed = **$ 16,234.00** | **NO** | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$16,234.00** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit. |

| 3 | *Secured claim of*: **Nissan Motor Acceptance Corp.**<br><br>Collateral description = **Certificate of Title Lien Notice on '19 Nissan NV**<br><br>Allowed Secured<br><br>Amount = **$12,092.25**<br><br>Priority of<br><br>lien= **1ˢᵗ**<br><br>**Lienholder**<br><br>Principal<br><br>owed = **$ 12,092.25** | **NO** | **NOT IMPAIRED** | Nissan Motor Acceptance Corp. shall be paid its allowed secured claim in the amount of **$12,092.25** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Nissan Motor Acceptance Corp. |

### B. Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| | N/A | | |

### C. Class[es]of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 4 , which contain general unsecured claims against the Debtor;

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| | [1122(b) Convenience Class]<br><br>**N/A** | | |

| 4 | General Unsecured Class [including any claims set forth in Section 2.2.A, above] | IMPAIRED | The General Unsecured Claims total **$4,421,515.71** of which **$630,000.00** are PPP loans that Debtor believes will be forgiven. The Debtor will be objecting to a number of other claims.<br><br>Based on the Cash Flow Analysis (Exhibit A), this class of creditors will receive a total base dividend of **$590,000.00** to be shared on a pro-rata basis.<br><br>It is anticipated that distributions will begin to this class of creditors in the 1st year of the Plan after all Administrative Debts have been paid.<br><br>Distributions shall be made quarterly thereafter to this class of creditors with the final payment being made in the 60th month of the Plan, estimated to be February 2028.<br><br>Payments to be made as follows:<br>1)  **$60,000.00**      in Year 1 of the Plan; and then<br>2)   **$135,000.00 in** Year 2 of the Plan; and then<br>3)   **$110,000.00 in** Year 3 of the Plan; and then<br>4)  **$130,000.00 in** Year 4 of the Plan; and then<br>5)  **$155,000.00 in** Year 5 of the Plan.<br><br>It is Estimated that after adjustments for PPP forgiveness and resolution of claims objections that approximately **21%** of claims in this class will be paid. |

D.  Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders: [There may be more than one class of Equity Interest holders in, for example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.]

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| **5** | Douglas Heck-is the sole Preferred Stockholder | Yes | Mr. Heck will receive no distribution under the Plan, and will relinquish his Preferred Stock to the Debtor upon his replacement as CEO. |
| **6** | Common Stockholders | Yes | Common Stockholders will receive no distribution under the Plan, other than to retain their common stock in the Debtor. |

## 2.3.    **Estimated Number and Amount of Claims Objections.**

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. [Set forth amount and number of Claims in each class that will be objected to.]

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
| **4** | 4 | $2,169,341.98 |
| | | |

## 2.4.    **Treatment of Executory Contracts and Unexpired Leases.**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract.  The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.  The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

4886-8120-2508, v. 1

Check all that apply:

[**X**]  Assumption of Executory Contracts.

The Executory Contracts shown on **Exhibit E** shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.  **Exhibit E** also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.


OR


[ ]  Assumption and Assignment of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit_____shall be assumed by the Debtor and assigned to the party listed in that Exhibit.   Assumption and assignment by the Debtor means that the Debtor will undertake the obligations under such contracts and unexpired leases, will cure defaults of the type that must be cured under the Bankruptcy Code, if any, and will assign the contract to the party listed.

If you object to the assumption and assignment of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption and assignment within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[**X**]  Rejection of Executory Contracts and Unexpired Leases.

The Executory Contracts with  shown on **Exhibit F** shall be rejected by the Debtor. Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown on **Exhibit F** , or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases.  If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

4886-8120-2508, v. 1

**[The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract Is 30 days from the date of the entry of Order Rejecting Contracts** .  Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.]

### 2.5.    Means for Implementation of the Plan.

The Debtor shall use the estimated funds on hand upon the Effective Date of the Plan to make the initial distributions for Administrative Expenses and the initial plan payment.

Additionally, the Debtor shall use its disposable income, as defined by Section 1129(a)(15) and as illustrated in the Cash Flow Projections, annexed hereto as **Exhibit A,** to make its monthly payments under the Plan.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

The Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

[Additional provisions, if any, for implementing the plan can be inserted here, including provisions necessary to comply with Section 1191(c)(3)(B).]

### 2.6.    Payments.

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Debtor except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Debtor shall make all Plan payments to creditors under the Plan.

**2.7**.    **Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Albert Francesco | CEO | $10,000.00/month |
| Douglas Heck | VP of Sales | $4,833.33/mo plus commissions |
| Angela Martins | HR/office Manager | $4,333,33/mo |
| Michael Grynberg | Controller | $7,200/mo |

**2.8.    Tax Consequences of the Plan.**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtors.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

**2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**

Debtor has provided projected financial information. Those projections are listed in **Exhibit A** .

**ARTICLE 3**
**FEASIBILITY OF PLAN**

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1.    Ability to Initially Fund Plan**.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

4886-8120-2508, v. 1

Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as **Exhibit <u>B.</u>**

**3.2.    <u>Ability to Make Future Plan Payments And Operate Without Further Reorganization</u>**.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in **Exhibit <u>A</u>** (referenced in § 2.9, above).

The Debtor's financial projections show that the Debtor will have an aggregate annual average cash flow over the five-year plan term, after paying operating expenses and post- confirmation taxes, of **$182,065.20** . The final Plan payment is expected to be paid in <u>February 2028</u>.

The Debtor is projecting revenue to increase by approximately 2% year over year during the life of the Plan.  Cash restraints will limit growth to the 2% estimate over the next five years, as all projected net revenue will be used to fund the Plan.  Accordingly, the projections do not project any increase in staff.

The Plan and flow of cash also reflects the generally slow quarter one due to winter weather and tax bills being due during that quarter, which leaves less cash for customers to purchase solar.  Sales generally begin to increase in April and reach its peak in the summer months.  While other businesses purchase solar at year end as a tax strategy and to decrease energy costs.

The Debtor, given its current status as a Debtor in Possession, does not have a financing agreement in place with a financial institution, thus needs to maintain cash levels of at least $100,000.00 month to month to allow for purchase of materials and to maintain steady operations.

The Debtor has changed the management team.  Albert Francesco, currently the CFO, will become the CEO moving forward. Douglas Heck, the current CEO, will become the VP of Sales.  Mr. Francesco has instituted stricter processes that include timing out payments on contracts to coincide with project completion benchmarks and only working within the specifics of the contracts and not working on any extras requested by customers unless a separate contract is executed.  Further, he has cut staff and restaffed many important positions.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as **Exhibit  C** .

## ARTICLE 5
## DISCHARGE.

Discharge. **If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6
## GENERAL PROVISIONS.

### 6.1.    Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation  of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of

commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2. **Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3. **Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. **Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear  and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. **Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. **Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

4886-8120-2508, v. 1

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7.** **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7
## ATTACHMENTS

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[ ]      Debtor's Assets at Fair Market Value, annexed as Exhibit _____.

[ ]      Debtor's Liabilities, annexed as Exhibit _____.

[**X**]   Financial forecast for the Debtor, annexed as **Exhibit A** .

[ ]      Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit ___.

[X]    Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as **Exhibit D** .

[ ]      Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ___.

[**X**]   Executory Contracts and Unexpired Leases, to be Assumed annexed as **Exhibit E** .

[ ]      Executory Contracts and Unexpired Leases to be Assumed and Assigned, annexed as Exhibit ___.

[**X**]   Executory Contracts and Unexpired Leases to be Rejected, annexed as **Exhibit F** .

[**X**]   Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as **Exhibit B**

[**X**]   Liquidation Analysis, annexed as **Exhibit C**

## ARTICLE 8
## <u>FREQUENTLY ASKED QUESTIONS</u>

**What Is the Debtor Attempting to Do in Chapter 11?**  Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor attempts to restructure the claims held against it.  Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11.  When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11.  The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?**  In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan.  If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?**  To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured.  The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article 2, Section   2.2   lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization  Important?**  Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan.  If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization ?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class.  If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Article 2, Section 2.2 identifies which claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is _____. Ballots should be mailed to the following address: Gillman, Bruton & Capone, LLC, 60 Highway 71, Spring Lake Heights, NJ 07762

**How Do I Determine When and How Much I Will Be Paid?** In Article 2, Section 2.2 the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9

## <u>DEFINITIONS</u>

**9.1.** The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2. Administrative Claimant**: Any person entitled to payment of an Administration Expense.

**9.3. Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4. Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses

of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5    Administrative Tax Claim**:  Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.    Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.    Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.    Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9.    Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.    Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.    Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12.    Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure.

**9.13.    Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.    Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which [DEBTOR] is the Debtor-in-Possession.

**9.15    Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.    Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.    Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.    Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.    Confirmation Hearing**: The hearing to be held on _____, 2023 to consider confirmation of the Plan.

**9.20.    Confirmation Order**:  An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21.    Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.    Debtor** and **Debtor-in-Possession**: [Debtor], the debtor-in-possession in this Chapter 11 Case.

**9.23.    Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.    Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.    Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.    Equity Interest**: An ownership interest in the Debtor.

**9.27.   Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.   IRC**: The Internal Revenue Code

**9.30.   Petition Date**: October 25, 2022, the date the chapter 11 petition for relief was filed.

**9.31.   Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.   Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.   Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.   Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.   Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.   Trustee**:  Holly Miller, Esq., the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.   Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

By: **/s/Albert Francesco**
       ALBERT FRANCESCO, CEO
       Spectacular Solar Corp. , Debtor-In-Possession