UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGION 3 and 9
Alexandria Nikolinos, Esquire
One Newark Center, Suite 2100
Newark, NJ 07102
Telephone: (973) 645-3014
Email:  Alexandria.Nikolinos@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ | : Case No. 22-18522-CMG |
| | : |
| In re: | : |
| | : Chapter 11, Subchapter V |
| Spectacular Solar, Corp. | : |
| | : The Honorable Christine M. Gravelle |
| | : |
| | : Hearing Date: March 21, 2023 @ 2:00 p.m. |
| Debtor. | : |
| _____ | : |

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE DEBTOR'S FIRST
MODIFIED CHAPTER 11 SMALL BUSINESS SUBCHAPTER V PLAN**

The United States Trustee (the "U.S. Trustee"), by and through his counsel, and in furtherance of his duties pursuant to 28 U.S.C. § 586(a)(3) and (5), hereby submits this objection (the "Objection") to the *First Modified Chapter 11 Small Business Subchapter V Plan* of Spectacular Solar, Corp. (the "Debtor") and in support of the Objection, respectfully states as follows:

**PRELIMINARY STATEMENT**

1.     The U.S. Trustee objects to confirmation of the Debtor's plan given the missing monthly operating report, lack of financial information for 2022, negative average cash flow, lack of evidence to support the Debtor's projections, that the Debtor's own projections don't support

their proposed plan payments on the effective date, the lack of information regarding PPP loan

forgiveness, and the insufficient liquidation analysis.

## JURISDICTION

2.      Pursuant to 11 U.S.C. § 586, the U.S. Trustee is obligated to oversee the

administration of cases commenced pursuant to chapter 11 of title 11 of the United States Code

("Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce

the laws as written by Congress and interpreted by the courts. *See United States Trustee v.*

*Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (the

U.S. Trustee has "public interest standing" under section 307, which goes beyond mere pecuniary

interest); *Morgenstern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir.

1990) (describing the U.S. Trustee as a "watchdog").

3.      Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor

and comment on plans and disclosure statements filed in Chapter 11 cases.

4.      Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard regarding

this Objection.

## BACKGROUND

**General Background**

5.      On October 27, 2022, (the "Petition Date), the Debtor filed a voluntary petition

and elected to proceed under Subchapter V of Chapter 11. (ECF No. 1).

6.      Since the Petition Date, the Debtor has remained in possession of its property and

management of its affairs.

7.      Douglass Heck is the CEO and Albert Francesco is the CFO of the Debtor. (ECF

No. 30, p. 7)

**Debtor's Monthly Operating Reports**

8.    The Debtor filed Monthly Operating Reports ("MORs") for November and December 2022. (ECF Nos. 31, 49).

9.    As of the date of this Objection, the Debtor's January 2023 MOR is outstanding.

10.    Debtor's February 2023 MOR will be due March 21, 2023, the same day as the Confirmation Hearing for the Plan.

11.    The Debtor's November and December MORs show the following:

|  | November 2022 | December 2022 |
|---|---|---|
| Net Cash Flow ($) | 26,986.43 | *(-74,070.72)* |
| Cash on Hand at End of Month ($) | 96,924.43 | 22,853.71 |

12.    The average net cash flow for the two months is *negative* $23,542.15.

**Debtor's Plan**

13.    On February 14, 2023, the Debtor filed its *First Modified Chapter 11 Small Business Subchapter V Plan* (the "Plan"). (ECF No. 46).

14.    The Plan provides that "[u]pon emergence from Chapter 11, the Debtor will have a new CEO, as Albert Francesco is set to take over from Mr. Heck." (*Id.* at p. 8).

15.    The Plan is signed by Albert Francesco as "CEO." (*Id.* at p. 33).

*Projections*

16.    The Plan includes "Historical Revenue, Expense, & Profitability" for 2019, 2020, and 2021 which shows net profitability being $34,583.00, $0, and $225,048, respectively. (*Id.* at p. 10).

17.    Attached to the Plan, the Debtor filed a Five-Year Cash Flow Forecast (the "Forecast"). (ECF No. 46-1).

18.    The Forecast shows that the Debtor's Net Operating Income will be as follows:

|  | Net Operating Income |
|---|---|
| 2024 | $275,709 |
| 2025 | $190,782 |
| 2026 | $179,993 |
| 2027 | $151,489 |
| 2028 | $112,353 |

(*Id.* at p. 9).

19.    The Forecast includes the following projections for February 2023 to June 2023:

|  | February 2023 | March 2023 | April 2023 | May 2023 | June 2023 |
|---|---|---|---|---|---|
| "Cumulative Net Income" | (53,616) | (70,199) | (81,243) | (45,925) | (1,134) |
| "Unsecured Claims" (bankruptcy plan payments) | 0 | 0 | 0 | (61,365) | (9,865) |
| "Cash Balance" | (48,866) | (65,449) | (76,493) | (97,175) | (56,884) |

(*Id.* at p. 2).

20.    The first page of the Forecast is "Projection Assumptions" which explains "Cash Balance[-] [b]alance based on streamlined collections and expenses. Month end balances ould(sic) be affected by timing." (*Id.* at p. 1).

21.    In the Forecast, the May 2023 "Unsecured Claims" are broken down to include:

| Kapitus | $25,000 |
|---|---|
| Unsecured Creditors Payment | $4,000 |
| Internal Revenue Service | $5,365 |
| Administrative Fees | $27,000 |
| TOTAL ($) | $61,365 |

(*Id.* at p. 2).

*Effective Date*

22.    The Plan defines the Effective Date as "30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise." (ECF No. 46, p. 32).

23.     Attached to the Plan is *Exhibit B – Projected Cash on Hand on Effective Day of Plan*. (ECF No. 46-2). The Debtor projects to have $27,000 from "[a]dditional cash Debtor will accumulate from net earnings between now and Effective Date [based on cash flow projections]." (*Id.*).

24.     The Plan provides Debtor's Counsel will be paid $20,000 on the Effective Date. (ECF No. 46, p. 13).

25.     The Plan provides the subchapter V trustee will be paid $7,000 on the Effective Date. (*Id.* at p. 14).

*26.*     The Summary of the Plan has conflicting information to the Plan and the Forecast in that (1) the estimated subchapter V trustee fees are $6,000 and (2) it provides the trustee and debtor's counsel could be paid over multiple quarters. (*Id.* at p. 5).

*Liquidation Analysis*

27.     The Plan explains that the General Unsecured Claims total $4,421,515.71, of which $630,000.00 are PPP loans that Debtor believes will be forgiven. (ECF No. 46, p. 20).

28.     The Plan furthers that the Debtor will be objecting to a number of claims and estimates that after PPP loan forgiveness and resolution of claim objections, the General Unsecured Creditors will receive 21% of their claims. (*Id.*).

29.     Also attached to the Plan is *Exhibit C – Liquidation Analysis*. (ECF No. 46-3). The liquidation analysis shows that unsecured creditors will receive 21% of their total claim under the Plan. (*Id.*).

30.     The Liquidation Analysis does not breakdown how much creditors would receive in Chapter 11 if the PPP loan is not forgiven or if the Debtor is unsuccessful in its claim objections.

**Stipulation of Settlement**

31.    On March 14, 2023, the Debtor filed a Stipulation of Settlement between the Debtor and Kapitus (the "Stipulation"). (ECF No. 52).

32.    The Stipulation provides that the Debtor will pay Kapitus $25,000 on the Effective Date. (*Id.* at p. 2).

33.    The Stipulation furthers that in the event there is a conflict between the Stipulation, the Plan, and the confirmation order, the terms of the Stipulation control. (*Id.* at p. 5).

## OBJECTION

34.    For cases proceeding under Subchapter V, the Bankruptcy Code provides "[t]he court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met." 11 U.S.C. § 1191(a).

**Failure to File Monthly Operating Reports**

35.    Section 1129(a)(2) provides that the Court shall only confirm a plan if "[t]he proponent of the plan complies with the applicable provisions of this title."

36.    Subchapter V debtors are subject to many of the same requirements as non-electing small business debtors, even though section 1116 does not apply in subchapter V cases. 11 U.S.C. § 1181(a).   That is because section 1187 applies most of the duties under section 1116 to subchapter V cases by reference.   Section 1187(b) applies subsections 1116(a)(2)–(7) and the reporting requirements of section 308.   As a result, subchapter V debtors must file the periodic financial reports required by section 308 and Rule 2015(a)(6).

37.    As of the date of this Objection, the Debtor has failed to file a Monthly Operating Reports ("MOR") for January 2023.

38.     Thus, the Debtor has not complied with the applicable provisions of this title as required for confirmation pursuant to section 1129(a)(2).

39.     Additionally, the Debtor's February 2023 MOR will be due March 21, 2023, the same day as the confirmation hearing for the Plan.

**Feasibility**

40.     Pursuant to Section 1129(a)(11), every chapter 11 plan must be feasible in order to be confirmed.    Section 1129(a)(11) provides that the Court shall confirm a plan only if the plan is not likely to be followed by the liquidation, or the need for further financial reorganization.    A plan proponent must demonstrate that a plan "has a reasonable chance of succeeding." *See In re Great Bay Hotel & Casino, Inc.*, 251 B.R 213, 226 (Bankr. D.N.J. 2000).

*Insufficient Evidence to Support the Debtor's Forecasts*

41.     There have been two MORs filed in this case—November 2022 and December 2022.

42.     The MORs show that the Debtor had a net cash flow of $26,986.43 in November 2022 and (-*$74,070.72*) in December 2022.

43.     The Debtor's outstanding MOR must be filed to fully assess its financial situation. However, from the two MORs filed, the Debtor has an average net cash flow of *negative* $23,542.15.

44.     The Debtor's Plan includes "Historical Revenue, Expense, & Profitability" for 2019, 2020, and 2021 which shows net profitability being $34,583.00, $0, and $225,048, respectively. However, no information was provided for 2022.

45.     Attached to the Plan, the Debtor filed a Five-Year Cash Flow Forecast (the "Forecast").

46.     In its first year, the Debtor is projecting "Net Operating Income" of $275,709. However, the historical data provided shows that in 2021 net profitability was $50,000 less at $225,048.

47.     Given that the MORs filed thus far show a negative average net cash flow, there is an MOR outstanding, and there is no financial information for 2022, there is insufficient evidence to support the Debtor's forecasts.

*Insufficient Funds on Effective Date*

48.     Even if the Debtor's forecasts are accurate, it is unclear if the Debtor will be able to make plan payments on the Effective Date.

49.     Pursuant to the Plan and the Stipulation, on the Effective Date the Debtor needs $52,000 to pay its counsel $20,000, the trustee $7,000 and Kapitus $25,000.

50.     Attached to the Plan is *Exhibit B – Projected Cash on Hand on Effective Day of Plan*. The Exhibit shows that the Debtor only projects to have $27,000 on the Effective Date from "[a]dditional cash Debtor will accumulate from net earnings between now and Effective Date [based on cash flow projections]."

51.     The Debtor is not projecting enough cash on hand on the Effective Date to make the full $52,000 payment pursuant to the Plan.

52.     Even if the Plan language was an oversight, and only Kapitus is being paid on the Effective Date, there is insufficient evidence to show the Debtor will have $25,000 on the Effective Date to pay Kapitus.

53.     The Debtor's most recent MOR shows that at the end of December 2022 the Debtor had $22,853.71 cash on hand.

54.     The Debtor's Forecast shows that the cash balance of the Debtor is forecasted to be negative from the beginning of the forecasts in February 2023 through and including the Effective Date.

55.     Thus, even by the Debtor's own forecasts, it will not have $25,000 on the Effective Date to pay Kapitus.

*PPP Loan Forgiveness*

56.     The Plan explains that the General Unsecured Claims total $4,421,515.71 and of those $630,000.00 are PPP loans that Debtor believes will be forgiven.

57.     The Plan does not contemplate payments to the SBA for the PPP loan.

58.     There is no explanation for why the PPP loans have not already been forgiven, why the Debtor believes the loans will be forgiven, and what steps the Debtor will take to ensure the loans are forgiven.

59.     Thus, it is unclear if the lack of payments to the SBA for the PPP loans is appropriate.

60.     Given the missing MOR, the lack of financial information for 2022, the negative average cash flow, the lack of evidence to support the Debtor's projections, that the Debtor's own projections don't support their proposed Plan payments on the Effective Date, and the lack of information regarding PPP loan forgiveness, the Debtor has not shown that its Plan has a reasonable chance of succeeding.

61.     Thus, the Debtor cannot satisfy feasibility under section 1129(a)(11).

**Liquidation Analysis**

62.     Section 1190(1)(b) requires subchapter V debtors to include a liquidation analysis in their plans.

63.      Here, the Plan explains that the General Unsecured Claims total $4,421,515.71 of which $630,000.00 are PPP loans that the Debtor believes will be forgiven.

64.      The Plan furthers that the Debtor will be objecting to a number of claims and estimates after PPP loan forgiveness and resolution of claim objections, the General Unsecured Claims will receive 21% of their claims.

65.      Attached to the Plan is *Exhibit C – Liquidation Analysis* which shows that unsecured creditors will receive 21% of their total claim under the Plan.

66.      The Debtor has failed to provide what distribution creditors would receive in Chapter 11 if the PPP loan was not forgiven or if the Debtor is unsuccessful in its claim objections.

67.      Thus, the liquidation analysis is insufficient to satisfy section 1190(1)(b).

**Minor Irregularities in the Plan**

68.      There are minor inconsistencies in the Plan that should be addressed.

69.      First, it is unclear how administrative claims will be paid. As previously discussed, the Plan and Forecast conflict with the summary at the start of the plan.

70.      Second, the Plan states it is signed by Albert Francesco as CEO, but Douglass Heck is the CEO.

## CONCLUSION

71.      Given the missing monthly operating report, the lack of feasibility, and the insufficient liquidation analysis, the U.S. Trustee respectfully requests that the Court deny confirmation of the Plan and grant such other relief as the Court deems just and proper.

72.     The U.S. Trustee leaves the Debtor to meet its burden and reserves all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection.

Respectfully submitted,

ANDREW R. VARA
UNITED STATES TRUSTEE
REGION 3 and 9

Dated: March 14, 2023                    By: _/s/ Alexandria Nikolinos_
                                              Alexandria Nikolinos
                                              Trial Attorney