UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

GILLMAN, BRUTON & CAPONE, LLC
60 Highway 71, Unit 2
Spring Lake Heights, NJ 07762
(732) 528-1166
Attorney for Debtor- In-Possession
MARC C. CAPONE MC4795

In Re:

**Spectacular Solar, Inc.**

Case No.: **22-18522**

Judge: **Christine M. Gravelle**

Chapter: **11**

# CERTIFICATION OF AL FRANCESCO IN SUPPORT OF CONFIRMATION OF CHAPTER 11 PLAN OF REORGANIZATION OF DEBTOR IN POSSESSION

I, Al Francesco, of full age, hereby certify as follows:

1. I am the CEO of Spectacular Solar, Inc., the Debtor in Possession in the above captioned Chapter 11 case.

2. I make this Certification in support of confirmation of the Debtor-in-Possession's Chapter 11 Plan of Reorganization pursuant to the provisions of Chapter 11 of Title 11 of the United States Code ("the Plan"). I am fully familiar with the terms and provisions of the Plan. I make this Certification based upon my personal knowledge of the terms and provisions of the Plan and of the Debtor's estate, as well as based upon my consultations with counsel, Gillman, Bruton & Capone, LLC., regarding the provisions of 11 U.S.C. §1129 and §1191.

3. On October 27, 2022, a voluntary petition for relief under Chapter 11 of the Bankruptcy Code was filed on behalf of Spectacular Solar, Inc. with the United States Bankruptcy Court. The Debtor elected to proceed under Subchapter V.

4. The First Modified Small Business Plan of Reorganization Plan was filed on February 14, 2023. On February 21, 2023, an Order Setting Deadlines and Scheduling Confirmation Hearing was entered by the Court.

5. Based upon conversations with Spectacular Solar, Inc.'s bankruptcy counsel, I believe that the Plan that has been filed complies with all of the applicable provisions of the Bankruptcy Code in accordance with §1129(a)(1).

6. The Debtor has received two Objections to the First Modified Small Business Plan of Reorganization. One filed by the Internal Revenue Service ("IRS") and the other filed by the United States Trustee's Office ("UST").

7. With respect to the IRS, it objects pursuant to §1106(a)(6) on the basis that it claims the Debtor has not filed certain 940 and 941 tax returns. The IRS has filed an estimated proof of claim for the missing quarters. These returns had been filed in a timely manner, but under the name and EIN of DC Solar Integrators LLC. On June 14, 2019, DC Solar Integrators LLC ("DC Solar") had filed a Certificate of Alternate Name with the IRS indicating a d/b/a of Spectacular Solar. As of that date, DC Solar merged into the Debtor and became a disregarded entity for tax purposes. Unfortunately, prior management had not properly notified our payroll service, ADP, thus, ADP did not change how it filed the quarterly returns. We are working on a resolution of this objection with the IRS and anticipate that it will be resolved prior to Confirmation.

8. With regard to the UST, they objected on multiple grounds:
    a. <u>January Monthly Operating Report has not been filed</u>. The Debtor has both the January and February MOR's completed, and both will be filed prior to Confirmation.
    b. <u>Feasibility</u>.
        i. *Insufficient Evidence to Support Debtor's Forecasts*: As was testified to at the 341a hearing, Debtor's business is somewhat seasonal, as revenue is much less during the Winter months when it is difficult to work on rooftops and is much greater in the Spring, Fall and Summer months.

        The UST focuses on the November and December MOR's, the first few months of the Debtor's cash flow projections and net profitability in 2021 being less than our projections. The UST should be aware that the January and February MOR's will also reflect lighter revenue as the entire period covered by the 4 MOR's that are due encompass our slow period. I would note that the Administrative payroll of $41,321.00 was not paid in January or February, thus we are able to maintain a positive cash flow during these months. This payroll expense will be paid out later in the year during our busy season. This will be reflected on the January and February MOR's.

        Additionally, in March we have begun to take in large deposits for new jobs that will be started this Spring. For example, a check for $135,000 just cleared our account on March 14th, and we are expecting additional large deposits by the end of March in the approximate amount of $600,000.00.

        The Debtor has deposited $57,500.00 into our attorney's trust account to cover all payments due on the Effective Date of the Plan. As for the 2021, income the UST is failing to account for the impact that COVID was continuing to have on the economy in general and the Debtor's industry, the supply chain issues that persisted into mid-2022, the cost cutting measures that the Debtor has implemented and the new management of the Debtor. *See Article 1.8, Page 11 of the Plan*.

ii.    *PPP Loan Forgiveness.* The Debtor still believes that the PPP loans will be forgiven. Pursuant to the terms of forgiveness, the Debtor must be current with monthly payments on the Notes at the time the application for forgiveness is submitted. Presently, the Debtor is not current, but as out revenue increases over the next few months, we will be able to bring the account current and file the application for forgiveness. The Debtor believes it meets all other criteria for PPP loan forgiveness.

    c. <u>Liquidation Analysis</u>. The UST objects on the basis that the Exhibit C-Liquidation Analysis does not indicate what percentage the general unsecured creditors would receive if the PPP loans were not forgiven. That figure would be 13% provided all claims are allowed. As indicated in the Plan, the Debtor will be filing a Motion Objecting to Claims that presently total $2,169,341.98. As indicated previously, the Debtor believes its PPP loans will be forgiven, but in the event they are not, the Debtor believes that a large portion of the claims it will object to will be reduced, as most are unliquidated and disputed claims. Thus, it is estimated, that based on the $590,000 to be distributed to the general unsecured creditor body over the life of the Plan, the final allowed claims that make up that general unsecured creditor body will receive more than the projected 21%.

    d. <u>Minor Irregularities in the Plan</u>. The UST objects to the fact that Albert Francesco signed the Plan as the CEO. Mr. Francesco has already taken over as the CEO and the Corporate Resolution indicating that will be filed as support to the Plan.

For the foregoing reasons, I submit that the UST's Objection has been adequately addressed and that the Court should overrule the Objection.

8. I believe, as plan proponent, that the Plan provides for payment to Spectacular Solar, Inc.'s unsecured creditors of an amount greater than they would receive if the Debtor's Chapter 11 Plan was not confirmed and the case was converted to one under Chapter 7 of the Bankruptcy Code. *As illustrated in Article 4 and Exhibit C of the Modified Plan on page 26*.

9. In accordance with §1129(a)(3), the Plan has been proposed in good faith and not by any means forbidden by law.

10. With respect to the Plan, the impaired classes, Class 2 consists of only one creditor, Kapitus Servicing, Inc. ("Kapitus"), which has cast a ballot in favor of the Plan and additionally a Stipulation of Settlement was filed with the Court which memorializes the treatment of Kapitus as set forth in the First Modified Plan, *See Docket Entry 52*. Class 4 consists of the

general unsecured creditor body and we have received three (3) ballots from this class and all ballots were cast in favor of the Plan. Class 5, the preferred stockholder has voted in favor of the Plan with one creditor casting a ballot in favor of the Plan . Class 6, Common Stockholders, we received five (5) ballots back, with all equity holders voting in favor of the Plan. The Certification of Balloting was filed with the Court Debtor's attorney on March 16, 2023, *See Docket Entry 55*.

11. Based upon my conversations with our counsel, I believe that acceptances of the Plan have been solicited in good faith and in compliance with the applicable provisions of the Bankruptcy Code within the meaning of §1125(e) of the Bankruptcy Code.

12. In accordance with §1129(a)(4), any payment made by or to be made by the Debtor for services or for costs and expenses in, or in connection with, this Chapter 11 case, or in connection with the Plan and incident to this Chapter11 case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable and necessary.

13. In accordance with §1129(a)(5), Proponent of the Plan has disclosed within the first Modified Small Business Plan of Reorganization the employment and compensation by the Debtor of Al Francesco, as CEO of the Debtor, of Douglas Heck as Vice President of Sales, Angela Martins as Head of Human Resources and Office Manager and Michael Grynberg as the Controller of the Debtor. *See Article 2.7, Page 24 of the First Modified Small Business Plan of Reorganization*.

14. With respect to all classes under our Plan, the Plan does not discriminate unfairly and is fair and equitable since the distribution proposed is made in accordance with the priorities established by the United States Bankruptcy Code. With respect to the Plan, the impaired classes, Class 2 has voted in favor of the Plan and a Stipulation of Settlement has been reached with the creditor and has been filed as support to the First Modified Plan. *See Docket No. 52* . The treatment of the creditor in this class is fair and equitable and in accordance with §1129(b)(2)(A), as this creditor will retain its lien and be paid in deferred cash payments an amount equal to the allowed amount of its secured claim. Class 4 voted in favor of the Plan. Both creditors from Class 2 that cast a ballot voted in favor of the Plan. Only 1 creditor casted a ballot in Class 5 (unsecured

creditors) and voted in favor of the Plan. The Class 2 and 5 creditors casting votes in favor of the Plan account for more than two-thirds of the amount of the allowed claims of the respective classes. Accordingly, section 1129(a)(7) has been satisfied.

15. With respect to Class 1 creditor, U.S. Small Business Administration, and Class 3 creditors Ford Credit and Nissan Motor Acceptance Corp. these creditors are not impaired. Additionally, all impaired classes have accepted the Plan. Accordingly, section 1129(a)(8) is satisfied.

16. The Plan provides adequate means for execution and implementation of the Plan. This will be accomplished through the funds on hand, the ongoing income received from Debtor's continued business operations as set forth in the Amended Small Business Plan of Reorganization Article 2; Part 2.5.

17. The treatment of any and all claims under the Plan of the type specified in Sections 507(a)(1), 507(a)(2), 507(a)(4), 507(a)(5), 507(a)(6), 507(a)(7) and 507(a)(8) of the Bankruptcy Code comply with the provisions of §1129(a)(9) of the Bankruptcy Code.

18. In accordance with §1129(a)(11), proponent believes that Confirmation the Plan is not likely to be followed by liquidation or by the need for further reorganization.

19. The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of Section 5 of the Securities Act of 1933. The objective in proposing the Plan was to obtain a reorganization of the Debtor's financial affairs, to pay our tax obligations, our secured debts and to pay unsecured creditors no less than they would receive if our case was a Chapter 7 liquidation. The Debtor's Plan is feasible, as I have already deposited with our attorney the amount of $57,500.00 needed to pay 507(a)(2) claims upon the Effective date of the Plan. The filed monthly reports, annexed as Exhibit D to the First Modified Small Business Plan of Reorganization and the Cash Flow Projections, attached as Exhibit A to the First Modified Small Business Plan of Reorganization, illustrate the Debtor's ability to make the monthly payment required by the Plan. Counsel for the Debtor has indicated that they will be filing an Application

to Approve Compensation after the confirmation hearing is held and they anticipate the additional fees and expenses to be approximately $25,000.00. The Subchapter V Trustee, Holly Miller, Esq., has estimated his fees to be $7,000.00, which will be paid upon the Effective Date of the Plan. The Debtor has deposited funds into my attorney's trust account prior to Confirmation and the granting of my attorney's fee application, but to the extent I am unable to pay the full amount due, I have reached an agreement to pay such fees and costs in a further lump sum payment into my attorney's trust account prior to the Effective Date of the Plan.

20.  In accordance with §1129(a)(12), all fees payable, as of the date hereof, under Section 1930 of Title 28 of the United States Code have been paid. Monthly operating reports have been filed through February 2023.

21.  Based upon my conversations with our counsel, §§1129(a)(6), (13), (14), (15) and (16) are not applicable to the Debtor's case or Plan.

22.  Accordingly, I believe that all of the applicable requirements of subsection (a) and (b) of §1129 of the Bankruptcy Code are satisfied with respect to the Plan and we request that the Court enter an Order confirming the Chapter 11 Plan of Reorganization pursuant to 11 U.S.C. §1191(a).

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge and belief. I am aware that if any of the foregoing statements are willfully false that I am subject to punishment.

Dated: 3/15/2023              /s/ Al Francesco
                              AL FRANCESCO